Appellant, Sue Goffe, appeals from the judgment of the Clark County Common Pleas Court wherein the court granted summary judgment to appellees, Robert and Mary Mowell.
This litigation began when Ms. Goffe filed her complaint against the Mowells alleging they negligently failed to supervise the operation of a Go-Cart facility they owned resulting in personal injury to her. In particular, Ms. Goffe alleged the Mowells negligently failed to supervise the operation of the go-carts during egress from the track and failed to provide other safety precautions creating an undue risk of harm to her. The Mowells answered and denied responsibility for Goffe's injuries and alleged several defenses including primary assumption of risk.
The Mowells moved for summary judgment contending that Goffe voluntarily engaged in a recreational activity and assumed the risk of that activity. In support of their motion, the Mowells provided evidentiary material which indicated that on September 4, 1996, Ms. Goffe and Erin Schoenfeld went to "Kart and Golfland" owned by the Mowells for the purpose of go-carting. Erin was nine years old so her father explained to her how to operate her go-cart.
The evidence showed that Erin and Ms. Goffe each drove go-carts. Erin was the last to complete her ride, and as she was completing her last lap she accidently stepped on the gas pedal rather than the brake and struck a parked go-cart in the off-loading area of the track. That go-cart then struck Ms. Goffe in the leg causing her injury. The defendants argued that the evidence demonstrated that Ms. Goffe could not recover for her injuries because she voluntarily assumed the risk of a recreational activity.
The plaintiff argued that the trial court should not grant the defendants' motion because she was a business invitee and consequently the defendants owed a duty to make the go-cart facility reasonably safe for her to use.
In granting summary judgment for the defendants, the trial court made the following findings and conclusions of law:
 The Court finds that the Plaintiffs were engaged in a recreational activity. As such, any liability for injuries suffered as a result of any of the participants' actions or inaction must be based upon the standard of recklessness or intent. No such allegations were raised in the complaint.
 Plaintiffs were also business invitees. The Defendants had a duty to exercise reasonable care in making the premises safe and to warn the Plaintiffs of any dangers which were not open and obvious. Plaintiffs have the burden to show some facts may exist, on which the trier of facts could conclude that the Defendants breached this duty. Plaintiffs must then show that some facts may exist which could be used as a basis to find that this breach of duty was the proximate cause of the Plaintiffs' injuries.
 Plaintiffs argue that the placement of the gate across the track was a contributing factor to the injuries because it forced the Plaintiff, Schoenfeld, to take the go-cart into the loading/unloading area at a high rate of speed. However, there are no facts which indicate that the placement of the gate caused the Plaintiff, Schoenfeld, to lose control of the vehicle as she entered the unloading zone. Therefore, there are no material facts which would tend to show that the gate was a proximate cause of the injuries.
 Any argument that the Defendants were negligent in supervising the activity by allowing someone of Plaintiff, Schoenfeld's age, physical attributes, and inexperience to engage in this particular recreational activity would have to be met with the counter-argument that the Plaintiff, Goffe, and Brian Schoenfeld, father and next friend of Plaintiff, Erin Schoenfeld, would be comparatively negligent at least to the same extent as the Defendants, and would have assumed the risk of participating in such an activity with a child ill-equipped to adequately control the go-cart. They would have been at least as aware of Erin's age, physical attributes and inexperience as were the Defendants. Yet, they brought Erin to the Defendants' business facility and paid for Erin's admission to the go-cart ride.
Appellants argue in a single assignment of error that the trial court erred in granting summary judgment to the defendants because she was a business invitee at the time of her injury and there was sufficient evidence in the record to demonstrate that the Mowells breached their duty of keeping their business premises in a reasonably safe condition so as not to expose her to an unnecessary danger.
Specifically, appellant argues that the Mowells breached their legal duty to her by creating an unreasonably dangerous environment for riders at the conclusion of the ride.
Ms. Goffe points out that the evidence demonstrated that the unloading area was a congested area where a rider who would leave a cart would be vulnerable to injury by a run-away go-cart which had no escape route because of the presence of the gate.
The Mowells argue that the trial court properly granted them summary judgment in this matter because the parties were engaged in a "recreational activity" and they could only be held liable if they had engaged in reckless or intentional conduct which caused Ms. Goffe's injuries. They argue that Ms. Goffe was not injured by a defect in the premises of the Mowells but from the accidental ramming of an empty go-cart by Erin Schoenfeld.
In Marchetti v. Kalish (1990), 53 Ohio St.3d 95, the Ohio Supreme Court held that where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participants' actions were either "reckless" or "intentional" as defined in Sections 500 and 8A of the Restatement of Torts 2d.
In Marchetti, the plaintiff a thirteen year old, alleged that the defendant, a fifteen year old boy, had negligently and wilfully and wantonly injured her in a neighborhood "kick the can" game.
The Court noted that "historically, the courts have been reluctant to allow persons to recover money damages for injuries received while participating in a sport, especially a contact sport, unless there was a deliberate attempt to injure." In denying recovery, the courts have often explained that a person who participates in a sport assumes the risk that he or she may be injured. Marchetti, supra, at 97.
Appellees argues that go-carting is a recreational activity per this court's decision in Lykins v. Dayton Motorcycle Club
(1972), 33 Ohio App.2d 269. In that case we held that motorcycle racing was a "recreational use" for zoning purposes and was not a nuisance per se.
We agree however, that go-carting is a "recreational activity" and accordingly Ms. Goffe should reasonably expect the ordinary hazards of engaging in that activity. For example, she might expect that while on the track in her cart she might collide with another go-cart.
In this case, however, she is not contending that her injury was caused by a fellow participant while riding in her go-cart on the track. She contends the design of the track facility caused her to be vulnerable to a runaway go-cart after she exited her go-cart and before she reached a place of safety.
The duty of the operator of an amusement device to provide a reasonably safe device, and his liability if he fails to do so, relate to the total operation of the device mechanically and with respect to its operation and location. Rathburn v. Humphrey Co.
(1953), 94 Ohio App. 429. In that case, the plaintiff was injured from branches which overhung a roller coaster.
One who rides an amusement device assumes the ordinary risks inherent in the ride, insofar as those risks are obvious and necessary, but only so long as the device is properly designed and the operator has used proper care in its construction and operation. He does not assume the risk of the proprietor's negligence. Pierce v. Gooding Amusement Co. (App. Franklin), 55 Ohio Law Abs. 556, 90 N.E.2d 585. See, cases cited at 76 Ohio Jur.3d, Premises Liability § 54 at 92, 93.
In Ashcroft v. Calder Race Course (Fla. 1986),492 So.2d 1309, the Florida Supreme Court held that riding a horse on a racetrack with a negligently placed exit gap was not an inherent risk for jockeys in the sport of horse racing. Ashcroft was injured when his horse veered across the race course and toward an exit gap. He lost control of the horse, fell off and was run over by another horse.
The court held that riding on a track with a negligently placed exit gap is not an inherent risk in the sport of horse racing. The court therefore found as a matter of law there was no express assumption of the risk with respect to the negligent placement of the exit gap and it was error for the court to instruct on assumption of risk. The court stated further:
 A landowner who assumes the task of providing the physical facility upon which a sport is to be placed has a duty to exercise reasonable care to prevent foreseeable injury to the participants that includes foreseeing that they may risk a known danger in order to participate. If injury occurs due to negligent maintenance of the facility, the landowner may be held liable.
A participant in a recreational activity is free to contract with the proprietor of responsibility for damage or injuries to the participant caused by the negligence of the proprietor. See,Valeo v. Pocono Intern. Raceway, Inc. (1985), 500 A.2d 492; see also Seymour v. New Bremen Speedway, Inc. (1971), 31 Ohio App.2d 141,146; Hine v. Dayton Speedway Corp. (1969), 20 Ohio App.2d 185.
In moving for summary judgments, appellants refer to the depositions of Erin Schoenfeld, Sue Goffe, James Zahransky, and Mary Mowell "filed with this court." The docket and journal entries do not reflect that such depositions were filed with the trial court. Recently, the parties to this appeal jointly agreed to permit the trial court to supplement the record with the deposition of Erin Schoenfeld.
In her deposition, Erin Schoenfeld testified no one explained to her how the ride would be conducted or how it would end. She stated her father explained to her how to operate the go-cart. She stated she did not recall seeing the exit or unloading area. (Schoenfeld Dep. At 19). She testified as the ride came to an end she accidentally hit the gas pedal instead of the brake and hit another go-cart which slammed into Ms. Goffe's leg. (Schoenfeld Dep. At 23).
Sue Goffe submitted her own affidavit in opposition to the Mowells' motion. She described how the gate which at the beginning of the ride separated the track from the unloading area opened at the conclusion of the ride funneling the riders into a confined pit area so that a runaway go-cart had no option but to strike go-carts in the unloading area. She stated that Erin drove her cart at near top speed into a empty go-cart which then struck and severely injured her as she stood outside her cart.
We agree with appellant that the trial court erred in granting summary judgment to the Mowells. A reasonable jury could find that the Mowells breached their duty of ordinary care to Ms. Goffe by designing an amusement ride which created an unreasonable danger that the rider would be injured while exiting the ride but before reaching a place of safety.[1] The assignment of error is sustained.
The judgment of the trial court is Reversed and Remanded for further proceedings.
YOUNG, P.J., and FAIN, J., concur.
Copies mailed to:
Michael K. Murry
Paul J. Winterhalter
Michael W. Sandner
Hon. Richard O'Neill
[1] Although the witnesses dispute whether Erin Schoenfeld was instructed on how to operate the go-cart or warned that the gate would open at the conclusion of the ride, it is undisputed that any such failure to so instruct or warn on the defendants' part has nothing to do with the accident. Erin testified she understood how to operate the go-cart from her father's instructions. There also is nothing in her testimony that suggested the presence of the gate caused her to accelerate rather than brake her go-cart.